

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

PP/MND                                    *271 Cadman Plaza East*
F. #2024R00900                            *Brooklyn, New York 11201*

July 25, 2025

By ECF

The Honorable Denny Chin
United States Court of Appeals
Visiting Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Uriel Kaykov
>        Criminal Docket No. 24-504 (DC)

Dear Judge Chin:

Trial is scheduled for August 25, 2025, in the above-referenced matter.  In anticipation of trial, the government respectfully moves in limine to (i) allow the victim to testify without revealing her full identity or other personal information; (ii) preclude evidence and argument concerning the possible punishment and collateral consequences attendant to a conviction; (iii) preclude evidence or argument regarding the government's motives and charging decisions; and (iv) admit statements made by the victim to a flight attendant immediately following the assault.

## I.    Factual Background

The government expects the evidence in this case to show that on June 15, 2022, the defendant and the victim, Kelly, were both passengers aboard Delta Air Lines flight 2257, an overnight flight from Phoenix to John F. Kennedy International Airport in Queens, New York. Kelly, then a 26-year-old woman, was assigned a window seat, and the defendant, then 32 years old, was seated next to her in the middle seat.  (The defendant was assigned the aisle seat but had switched seats with his cousin.)  After the plane took off, Kelly fell asleep and subsequently woke up to a "weird" feeling that she could not identify.  Kelly got up from her seat, went to the bathroom, and returned to her seat and fell asleep again.  After falling asleep for the second time, Kelly awoke to the defendant touching her vagina area over her clothes.  Kelly went to the rear of the aircraft, told a flight attendant what happened, and requested another seat.  The flight attendants placed Kelly in another seat, got her belongings, and told the pilots about the incident. The flight was met by law enforcement who escorted the defendant and his cousin off the flight.

After law enforcement met the flight at the gate, the defendant gave a statement. When he was told that the female passenger seated next to him had alleged that he had inappropriately touched her, the defendant said that he was married, and that he was surprised such an allegation was made as he did not do anything on the aircraft as he was sleeping for much of the flight.

On December 9, 2024, a grand jury in this district returned the two-count indictment against the defendant, charging him with engaging in abusive sexual contact, in violation of 18 U.S.C. § 2244(b) (a felony), and simple assault, in violation of 18 U.S.C. § 113(a)(5) (a misdemeanor).

## II.   The Government's Motions in Limine

In advance of trial, the government moves in limine to (i) permit the victim to testify without revealing her full name; (ii) preclude evidence and argument concerning the possible punishment and collateral consequences facing the defendant if convicted of the charged offenses; (iii) preclude evidence or argument regarding the government's motives and charging decisions; and (iv) admit statements made by the victim to a flight attendant immediately following the assault

### A.   The Victim Should be Permitted to Testify Without Revealing Her Full Identity

The government respectfully requests that the victim be permitted to testify under her first name, "Kelly," only, and to not be required to disclose uniquely identifying information, such as her address, names of her family members, and exact place of education or employment. As discussed further below, these measures, which have been routinely used in this district in similar cases, are necessary to protect Kelly from potential harassment from the media and others and undue embarrassment.

#### i.   Applicable Law

The Confrontation Clause guarantees defendants in all federal and state criminal prosecutions the right to confront government witnesses testifying against them. California v. Green, 399 U.S. 149, 173-74 (1970). This right, however, is not absolute. A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests in the criminal trial process. Chambers v. Mississippi, 410 U.S. 284, 295 (1973). For instance, the Supreme Court has observed that there is "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

In deciding whether to limit the scope of cross-examination, the court must balance the government's reasons for requesting such limitations against the defendant's interest in the full cross examination of the witness. See Alford v. United States, 282 U.S. 687, 694 (1931); Smith v. Illinois, 390 U.S. 129, 134 (1968) ("[I]f the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some

2

showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling."). The Second Circuit has held that "there are two central interests safeguarded by Smith and Alford. First, the defense needs testimony as to a witness' identity on cross-examination so that the defense can obtain this information which may be helpful in investigating the witness out of court or in further cross-examination. Second, the defense may need the witness to reveal his address or other identifying information in court because knowledge of the identifying information by the jury might be important to its deliberations as to the witness' credibility or his knowledgeability." United States v. Raniere, No. 20-3520-CR, 2022 WL 17544087, at *6 (2d Cir. Dec. 9, 2022) (alterations, citations and internal quotation marks omitted).

In the trial context, courts have found that the potential for reprisals, humiliation, or annoyance are sufficient to justify nondisclosure of personal identifying information by a witness. See, e.g., United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) ("In the event the government seeks to limit disclosure of identifying information in open court, the government must provide a reason for the limitation. The reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness.") (alterations, citations and internal quotation marks omitted); see also Raniere, 2022 WL 17544087, at *6 (upholding district court's determination that witnesses testifying using last names "could chill their willingness to testify, for fear of having their personal histories publicized").

Once the government identifies a need to protect the witness's full identity, the defendant must demonstrate a "particularized need" for the information, which the Court weighs against the harm to the witness. Marcus, 2007 WL 330388, at *1. In Raniere, the Second Circuit affirmed this same procedure, where the district court found that "Raniere failed to present a particularized need for the witnesses' last names to be disclosed, since he already knew the identity of the individuals and could articulate no reason why disclosing last names would help the jury assess the witnesses' credibility." 2022 WL 17544087, at *7.

In many other cases involving the testimony of victims of sexual abuse, including nearly identical cases involving sexual assaults on airplanes, courts in this district and circuit have permitted witnesses to testify without disclosing their full names. See Pretrial Conference Tr. at 10-13, United States v. Katz, 19-CR-115 (FB) (E.D.N.Y. June 14, 2021) (permitting victim to testify using only her first name regarding sexual assault on an airplane); see also United States v. Bannister, No. 15-CR-537 (PAE), 2023 WL 2596890, at *3-4 (S.D.N.Y. Mar. 22, 2023) (permitting an adult victim of domestic and physical abuse and her mother to replace their names in the court transcript with their initials to protect their privacy and safety); Order at ¶¶ 3-4, United States v. Martinez, No. 17-CR-281 (ERK) (E.D.N.Y. Dec. 18. 2017) (Docket No. 34) (allowing the adult victim to testify under a pseudonym in a sex abuse case because "the case has already received significant national and local press coverage," and revealing the victim's identity "would likely cause her anxiety and risk social stigma"); Pretrial Conference Tr. at 6-10, United States v. Quraishi, 15-CR-598 (E.D.N.Y. Apr. 5, 2016) (Docket No. 46) (where the defendant was charged with abusive sexual contact and assault on an airplane, Judge Amon permitted the victim-witness to testify using her first name only); Order at 2, United States v.

3

Rivera, 09-CR-619 (E.D.N.Y. Apr. 26, 2011) (Docket No. 231) (permitting victims testifying in graphic detail about acts of forced prostitution and sexual contact with customers and others to testify using their first names only); Raniere, 2022 WL 17544087, at *6; United States v. Graham, No. 14-CR-500 (NSR), 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (permitting victims of sex trafficking and kidnapping to testify under their first names because there is a "legitimate and substantial" interest in protecting the victims."); United States v. Paris, No. 06-CR-64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (Victim-witnesses permitted to testify using first name and last initial in a sex abuse case "to protect them from adverse personal, professional, and psychological consequences.").

ii.      Discussion

The limited protections requested by the government are reasonable, necessary and appropriate to protect Kelly's safety and well-being, avoid harassment of Kelly by the press and others, and prevent undue embarrassment and other adverse consequences. Kelly is expected to testify in detail about being the victim of degrading and humiliating treatment by the defendant, including being awoken by the defendant engaging in unwanted groping and sexual acts. Kelly immediately reported these concerns to a flight attendant and law enforcement, thus initiating this case.

Cases of a similar nature have historically received press coverage. See, e.g., "Mile-high perv Nadeem Quraishi convicted of sex abuse for rubbing lotion on sleeping woman during flight to JFK," New York Daily News, available at https://www.nydailynews.com/2016/04/20/mile-high-perv-nadeem-quraishi-convicted-of-sex-abuse-for-rubbing-lotion-on-sleeping-woman-during-flight-to-jfk/; "Brooklyn man dodges prison after molesting woman on JFK flight," New York Post, available at https://nypost.com/2022/12/11/brooklyn-man-dodges-prison-after-molesting-woman-on-jfk-flight/. And even if the press does not report on this case, maintaining Kelly's anonymity is appropriate as disclosure would cause needly anxiety and create a significant potential for her to be harassed, or face other negative repercussions, such as employment termination. See, e.g., "NY will pay $750K to state worker fired for her testimony in sex harassment case," Times Union, available at https://www.timesunion.com/capitol/article/ny-pay-750k-worker-fired-testimony-sex-20370391.php.

In this case, to require Kelly to provide full identifying information does not serve any of the legitimate purposes identified by the courts, such as the defendant's obtaining information for in- or out-of-court investigation or attempting to discredit the victim before the jury. The defendant in this case knows who the victim is and will not be prevented from presenting a defense in the event that the victim is referred to by her first name only during the trial. Moreover, the victim's current address, education and precise places of employment is entirely irrelevant to her testimony under the facts of this case which solely concern what occurred on flight 2257. Rather, requiring Kelly to provide her identifying information would serve only to harass, embarrass and "to humiliate or annoy the [victim]." United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970). These purposes are directly at odds with the rights that victims are to be afforded under the Crime Victims' Rights Act, which include the right to be heard but also to be treated with respect for their dignity and privacy. See 18 U.S.C.

4

§ 3771(a)(8).  Indeed, requiring victims of sexual abuse to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized, and the embarrassment and humiliation that such publicity could cause them as they rebuild their lives.

Finally, the government expects that the defendant will be unable to articulate any "particularized need" for the disclosure of Kelly's last name or other personal information in open court.  The defendant in this case knows Kelly's full name. Accordingly, the defendant will not be prevented from presenting a defense if she is referred to by only her first name during the trial.  Moreover, Kelly's current address, family members' names and schools or places of employment (if any) are entirely irrelevant to her testimony, while there is a risk that disclosure of that information would identify Kelly with particularity, and thus subject her to harassment and embarrassment, or additional consequences.[1]

For these reasons, the government respectfully requests that the Court permit Kelly to testify with only her first name and limit the disclosure of any identifying information.

B.    The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences

Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant.  Pursuant to Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible." See Fed. R. Evid. 402.  "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ." United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403.  The defendant's punishment is not a fact "of consequence" to be determined at trial. Therefore, any evidence of those issues is not relevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  Id.  Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. See generally Sand, et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established

---

[1]    To the extent the Court or the defendant has a concern that that the withholding of Kelly's last name effectively endorses her status as a victim, the Second Circuit has held that this is "correctly addressed [] with an appropriate jury instruction." Raniere, 2022 WL 17544087, at *7.  In the alternative, Kelly can be provided with an alias to use in court so that the jury does not know her identity is being protected.

5

precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts have repeatedly precluded evidence of the potential sentences defendants face on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury. See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment). In short, guilt should determine punishment, not the other way around. See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").

C.      The Court Should Preclude Evidence or Argument Regarding the Government's Motives and Charging Decisions

The defendant and his counsel should be precluded from introducing evidence or making arguments before the jury regarding the government's motives and charging decisions; including the decision to charge the defendant with a felony. Such evidence and argument are irrelevant to innocence or guilt and present a substantial risk of misleading the jury or inviting jury nullification. They should be categorically precluded.

Courts have consistently held—and often give jury instructions reflecting—that arguments regarding the government's decisions during an investigation and its motives and timing in bringing charges are irrelevant, unduly prejudicial and improperly invite jury nullification. See, e.g., United States v. Knox, 687 F. App'x 51, 54 (2d Cir. 2017) (instructing jury that "government is not on trial" is "appropriate"); United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"). That is so because a claim that a prosecution has been brought selectively, or for improper motives, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). "Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997); see also United States v. Watson, No. 23-CR-82(EK), 2024 WL 2706009, at *2 (E.D.N.Y. May 26, 2024) ("The government's motives for charging the defendants are not a proper consideration for the jury."); Fed. R. Crim. P. 12(b)(3)(A)(iv) (motion for "selective or vindictive prosecution" must be made pretrial).

Recognizing that there are many considerations that influence whether and when a prosecuting authority may bring charges against a particular individual, courts consistently preclude defendants from argument related to the government's motives and charging decisions, including arguments that a defendant was improperly targeted. See, e.g., United States v.

6

Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Inniss, No. 18-CR-134 (KAM), 2019 WL 6999912, at *6 (E.D.N.Y. Dec. 20, 2019) (precluding evidence of authorities' charging decision because considerations such as "'timing issues, the availability and allocation of law enforcement resources and prosecutorial priorities'" all contribute to that decision, and are "entirely irrelevant" at trial); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper."). The preclusion of arguments related to a charging decision include the rationale for a federal versus local prosecution (see, e.g., United States v. Bryant, 5 F.3d 474, 476 (10th Cir. 1993) (trial court properly prohibited defense counsel from inquiring into basis for federal, rather than state, prosecution)), the severity of the charged crime (see United States v. Wade, 962 F.3d 1004, 1012 (7th Cir. 2020) (finding arguments aimed at suggesting the charged crime was not serious or harmful were improper nullification claims)); or the fact that additional charges were added during the pendency of the investigation, see United States v. Goodwin, 457 U.S. 368, 380 (1982) (rejecting argument that indicting the defendant for felony assault while misdemeanor charges from the same incident were pending was vindictive because "[f]or just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.").

Ultimately, the jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000), not on the government's purported motives or charging decisions. Evidence concerning such matters is irrelevant, and introduction of evidence or argument concerning the motives behind the government's investigation would present an unacceptable risk of confusing the issues and misleading the jury. The Court should therefore preclude any such evidence or argument, including arguments that other individuals have or have not been charged for similar conduct.

    D.   The Court Should Permit the Government to Admit Statements Made by the Victim to a Flight Attendant After the Assault

As noted above, following the assault, Kelly approached a flight attendant and informed her of what had happened. The flight attendant helped Kelly switch her seat on the plane and retrieved Kelly's belongings. The government expects that the flight attendant will testify about the incident, including what Kelly said when she approached her and Kelly's visibly upset demeanor as she recounted what just occurred. Kelly's statements to the flight attendant are admissible as present sense impressions pursuant to Federal Rule of Evidence 803(1) or excited utterances pursuant to Federal Rule of Evidence 803(2).

7

    i.   Applicable Law

   Rule 803(1) provides an exception to the general rule against hearsay for any statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question." United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994) (internal citations omitted). Because "in many, if not most, instances precise contemporaneity is not possible, . . . a slight lapse is allowable between the event perceived and the declarant's statement." Id. (internal citation and quotation marks omitted). "[T]here is no per se rule indicating what time interval is too long." Id. (citation and internal quotation marks omitted).

   The reason for the present sense exception is twofold. First, the immediacy requirement reduces the opportunity for reflection and thus minimizes the likelihood of deception or fabrication on the part of the declarant. Second, immediacy also reduces the likelihood that the declarant will have inaccurately remembered the event in question. See United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002) ("Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.").

   An excited utterance is a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To qualify as an excited utterance, the proponent of an out-of-court statement must establish the following: (i) that a startling event occurred; (ii) that the declarant made the statement while under the stress of the excitement caused by the startling event; and (iii) that the declarant's statement relates to the startling event. See United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001).

   "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability. An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998).

    ii.   Discussion

   Kelly's statements to the flight attendant concerning the assault qualify as both present sense impressions and excited utterances. Kelly's statements are quintessential present sense impressions because they were made immediately after the incident, and the statements "describe . . . the event perceived." Mejia-Valez, 855 F. Supp. at 613. Further, the statements are admissible as excited utterances as experiencing unwanted sexual touching on an airplane is undoubtedly a "startling event," and Kelly made the statements right after the event happened, when she was clearly under the "stress of excitement" caused by it.

8

Courts have admitted similar statements in cases with nearly identical facts to those here.  For example, in United States v. Jennings, the defendant groped a female victim seated next to him during an overnight flight.  496 F.3d 344 (4th Cir. 2007).  After switching her seat, the victim described what happened to the passenger seated next to her, including that the defendant had "rubbed her inner thigh [and] locked his hands between her crossed legs in order to rub her buttocks."  Id. at 349.  The Fourth Circuit affirmed the admission of the victim's statements to the passenger, noting "we have little difficulty in concluding that [the victim's] statements to [the passenger] related a startling event and were made while [the victim] was still under the stress of the event."  Id. at 350.  In a similar case, a woman was sleeping on a flight when she awoke to the defendant placing "his hand underneath her shorts and [] rubbing her leg."  United States v. Erramilli, No. 11 CR 0778, 2013 WL 1403206, at *2 (N.D. Ill. Apr. 4, 2013), aff'd, 788 F.3d 723 (7th Cir. 2015).  The district court admitted the victim's statements made to the defendant (calling him a "pig" and stating, "you shouldn't have touched me") as "excited utterances under Rule 803(2) relevant to the issue of whether the contact was without Victim A's permission."  Id. at *10.   And outside of an airplane context, courts generally recognize that a victim's statements relaying the details of a crime that just occurred are admissible pursuant to these hearsay exceptions.  See e,g., United States v. Hadden, No. 23-6822-CR, 2024 WL 4456203, at *3 (2d Cir. Oct. 10, 2024) (affirming the admission of statements as excited utterances made by a victim who sent text messages to a friend from a hospital bathroom reporting the defendant's abuse moments earlier); United States v. Pizarro, No. 17-CR-151 (AJN), 2018 WL 2089346, at *3 (S.D.N.Y. May 4, 2018) (admitting victim's statements to his wife and law enforcement following a robbery under both the present sense impression and excited utterance exceptions).[2]

Accordingly, the government should be permitted to introduce the statements Kelly made to the flight attendant at trial.

---

[2]	Finally, because none of the hearsay statements that the government seeks to admit were "testimonial," i.e., "formal statements to law enforcement that an individual would expect to be used for prosecution," their admission does not violate the Confrontation Clause.  See United States v. Tyrell, 840 F. App'x 617, 622-23 (2d Cir. 2021) ("Our court has held that the confrontation clause has no applicability outside of testimonial statements, including in a situation where a defendant's non-testimonial self-incrimination implicates another defendant.").

III.     Conclusion

      For the above reasons, the government respectfully requests that the Court grant its motions in limine.

                                              Respectfully submitted,

                                              JOSEPH NOCELLA, JR.
                                              United States Attorney

By:            /s/
                                              Philip Pilmar
                                            Molly N. Delaney
                                            Assistant United States Attorneys
                                            (718) 254-7000

cc:     Clerk of the Court (DC) (by ECF)
        Jacob Kaplan, Esq. (by ECF)