

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR:MND
F.# 2024R00900

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 26, 2026

<u>By ECF</u>

The Honorable Denny Chin
United States Court of Appeals for the Second Circuit
Visiting Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Uriel Kaykov
> <u>Criminal Docket No. 24-504 (DC)</u>

Dear Judge Chin:

The government respectfully submits this letter in advance of the defendant Uriel Kaykov's sentencing, which is scheduled for March 5, 2026. For the reasons set forth below, the government respectfully requests that the Court impose a sentence of 3-6 months' imprisonment.

I.    <u>Background</u>

The sentencing stems from the defendant's conviction of assault after he touched and rubbed a sleeping female victim's vagina area without her permission during an overnight flight to New York. <u>See</u> Presentence Investigation Report dated December 19, 2025 ("PSR") ¶ 1.

On June 15, 2022, the defendant and the victim ("Kelly") were both passengers in the same row on Delta Flight 2257, an overnight flight from Phoenix, Arizona to John F. Kennedy International Airport in Queens, New York. PSR ¶ 4. Kelly, a 26-year-old woman, was traveling home after participating in a youth ministry retreat in Phoenix. Kelly was assigned the window seat (24F); PSR ¶ 5; UK_00060. The defendant was traveling with his cousin. PSR ¶ 5; UK_00060. The defendant was assigned to the aisle seat (24D), but upon boarding the flight, he instead sat next to Kelly in the middle seat (24E), and his cousin sat in the aisle seat. PSR ¶ 5; UK_00060. After the plane took off, Kelly fell asleep in her seat. PSR ¶ 5. She awoke to a "weird" feeling she could not identify. <u>Id.</u> Kelly got up, went to the restroom and returned to her seat, where she fell asleep again. <u>Id.</u> Kelly woke up to the defendant's hand rubbing her vagina area over her clothes. <u>Id.</u> Kelly immediately got up and reported to the flight attendant that the defendant had been touching her inappropriately and requested that she be moved away from the

defendant.  Id.  The flight attendant gathered Kelly's belongings, moved her to another seat and reported the incident to the pilots.  Id.

On December 9, 2024 the defendant was charged with abusive sexual contact in the special aircraft jurisdiction of the United States in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b) (Count One) and assault in the special aircraft jurisdiction of the United States in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 113(a)(5) (Count Two).  ECF No. 1.

On August 21, 2025 – three days before trial was scheduled to begin – the defendant pled guilty before Your Honor to Count Two for assaulting Kelly by offensively touching her without her permission, in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 113(a)(5).  August 21, 2025 Minute Entry.  Count Two is a Class B misdemeanor, and therefore the United States Sentencing Guidelines do not apply.  PSR  ¶ 10.  The maximum term of imprisonment for Count Two is six months.  PSR ¶ 39.[1]

II.    The Appropriate Sentence

A sentence of 3-6 months' imprisonment is appropriate here in view of the serious nature of the conduct, to provide just punishment in the case of a harmed victim, and to afford specific and general deterrence.

As the Court is aware, Section 3553(a) requires sentencing courts to consider a number of factors in imposing a sentence, including the nature and circumstances of the violation and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner.  Sentencing courts must also consider the kinds of sentences available, pertinent policy statements and the need to avoid unwarranted sentencing disparities.

Foremost, the nature of and circumstances of the offense, 18 U.S.C. § 3553(a)(1), show it to have been a shocking and life-altering crime committed by the defendant against Kelly.  By touching a sleeping woman's genitals without her knowledge, the defendant violated the most basic codes of decency, respect, and lawful behavior.  See, e.g., United States v. Quraishi, 719 F. App'x 65, 67 (2d Cir. 2018) (affirming the district court's sentence in a case where a defendant applied lotion to a sleeping woman's body, including her vagina area, on a flight because the sentence was based on the "seriousness of the crime and [the defendant's] lack of sincere remorse"

_____

[1]    The victim has indicated she is not seeking restitution in this case; however, the victim submitted a victim impact statement on February 26, 2026.

and noting that "given the egregious nature of [the] conduct, the district court's sentence of 24 months' imprisonment gives us no pause whatsoever").

Here, the defendant took advantage of a vulnerable person, and one who was in no position to provide consent for what was occurring. That the defendant assaulted her in such a manner demands imposition of a penalty that reflects the seriousness of his conduct and to promote respect for the law. 18 U.S.C. §§ 3553(a)(1) and (2)(A). Further, punishing a defendant who chose to gratify himself at the long-term emotional and physical cost of another favors a strong sanction. As Kelly wrote in her victim impact statement:

> For years, I have had regular nightmares reliving that moment. I wake up feeling panicked, as if it is happening all over again. Sleep, which should be a place of rest, has often become another place where I am forced to revisit the trauma. The exhaustion from that has affected every part of my life, my work, my relationships, my ability to feel fully present. The hardest part is that something that lasted a relatively short time has changed me in ways that feel permanent. I no longer move through the world with the same sense of safety. I think twice about situations I never used to question. I carry a vigilance that is heavy and constant. . . . This experience has taken from me a sense of trust in others, in my surroundings, and sometimes even in myself. I grieve the version of me that existed before that flight. . . . The assault was not just a single act in time. It has been years of anxiety, disrupted sleep, fear, and emotional pain. It has altered the way I experience the world. No one should have to carry this.

In terms of specific deterrence, incarceration will underscore that the defendant cannot engage in inappropriate contact with others absent first obtaining their consent. [2]

---

[2] With respect to the history and characteristics of the defendant, 18 U.S.C. § 3663(a)(1), the defendant has two prior arrests, both from 2012. First, the defendant was arrested on or about January 26, 2012 and charged in Queens County Criminal Court with driving while impaired after he was observed driving a vehicle which emanated a strong odor of marijuana and the defendant admitted he had smoked marijuana. PSR ¶ 13. The defendant resolved this incident with a fine, a license suspension and participation in an alcohol abuse program. Id. Second, the defendant was arrested shortly thereafter on or about February 14, 2012 and charged with manufacturing, distributing or disbursing any controlled substance after he possessed a small bag of marijuana when he crossed the border between the United States and Mexico, however, as noted in the PSR, there is no disposition related to that arrest. PSR ¶ 17.

3

In addition, there is a clear need for general deterrence in cases like this one. It is well documented that sexual assaults aboard airlines have been steadily and alarmingly increasing for over a decade. See, e.g., "Sexual Assaults on Airplanes Are on the Rise," Video Report, CBS News, February 16, 2026, available at https://www.cbsnews.com/video/sexual-assaults-on-airplanes-are-on-the-rise-cbs-news-investigation-finds/ (last accessed February 24, 2026) (recognizing that the Federal Bureau of Investigation (FBI) – just one agency – investigated more than 150 cases of airline passengers sexually assaulting other airline passengers in 2025); see also "Man Sentenced to 6 Months in Prison for Sexually Assaulting Woman on Seattle Flight," available at https://www.king5.com/article/news/crime/man-sentenced-6-months-prison-sexually-assaulting-woman-on-plane/281-d53fec64-4546-4c14-b57a-1309aac72bda (last accessed February 24, 2026) (noting there was a 25% increase in investigations of sexual misconduct on flights between 2019 and 2021 and "most perpetrators of these cases are men and they target women [and] unaccompanied minors"); "FBI: Sexual Assaults on Flights Increasing 'at an Alarming Rate,'" CNN, available at https://www.cnn.com/2018/06/20/politics/fbi-airplane-sexual-assault (last accessed February 24, 2026) (noting a 66% increase of reported sexual assaults on planes between 2014 and 2017).

A review of federal prosecutions involving defendants who engaged in conduct similar to that of the defendant[3] – groping women on airplanes – confirms that this criminal behavior is far too common. See, e.g., United States v. Baker, 25-CR-14 (AB) (D.N.J.) (defendant pled guilty to abusive sexual contact on an aircraft after forcing a female passenger to touch him and grabbing her breast over her clothing); United States v. Bostick, 23-CR-155 (JNW) (W.D. Wash.) (defendant sentenced to nine months' imprisonment after pleading guilty to assault pursuant to 18 U.S.C. § 113(2) after he rubbed the inner thigh of the female passenger sitting next to him on a flight, as well as grabbed her buttocks); United States v. Brick, 23-CR-52 (JHC) (W.D. Wash.) (a defendant was sentenced to six months' incarceration after pleading guilty to abusive sexual contact aboard an aircraft after he touched a female passenger multiple times while she was asleep, including groping her breast and trying to place his hands under her pants); United States v. Manuella, 23-CR-132 (SDW) (D.N.J.) (defendant was sentenced to two years' imprisonment after pleading guilty to assault with intent to commit another felony after he touched a female passenger's groin and inner thigh with his hand through the victim's clothing); United States v. Berry, 21-CR-20598 (RNS) (S.D. Fla.) (defendant pled guilty to three counts of assault and was sentenced to 60 days' imprisonment on each count after he, among other things, brushed an empty cup against the backside of a female flight attendant and groped another flight attendant's breasts); United States v. Katz, 19-CR-115 (FB) (E.D.N.Y.) (a defendant who put his hands inside the pants

_____

[3]    These cases are highlighted due to factual similarities to the defendant's conduct. Where available, the government has included the sentences imposed in those cases. However, some of the cited cases involve defendants convicted following trial, or convicted of a felony charge of abusive sexual conduct in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b), and the government has noted those potentially distinguishing facts.

of a sleeping woman during a flight was sentenced to one of year probation after being convicted at trial of one count of abusive sexual contact in the special aircraft jurisdiction of the United States and one count of assault); United States v. Quraishi, 15-CR-598 (CBA) (E.D.N.Y.) (defendant convicted following trial of one count of abusive sexual contact and one count of assault in the special aircraft jurisdiction of the United States was sentenced to 24 months' imprisonment after he applied lotion to a sleeping woman's body, including her vagina area, on a flight); United States v. De Jesumaria, 2:14-CR-688 (BRO) (C.D. Cal.) (defendant, who was convicted following a trial for abusive sexual contact aboard an aircraft, was sentenced to six months' imprisonment after he touched a women's breast, inner thigh and groin on an overnight cross-country airplane flight).

Millions of strangers are crammed daily into commercial flights crossing, entering and exiting the United States.  Many flights occur under the same circumstances found here – late at night, aboard a dark cabin and miles from anyone who can be trusted to help.  A serious penalty – an incarceratory sentence – is needed in this case so the public at large appreciates that similar conduct carries too high a price to risk replicating.

III.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 3-6 months' imprisonment.

                                    Respectfully submitted,

                                    JOSEPH NOCELLA, JR.
                                    United States Attorney

                        By:    /s/ Molly N. Delaney
                                    Molly N. Delaney
                                    Assistant U.S. Attorney
                                    (718) 254-6571

cc:    Jacob Kaplan, Defense Counsel (via email and ECF)
        Clerk of Court (DC) (via email and ECF)
        Michelle Malko, Probation (via email)